The writ, in this case, was returned before me at Richmond Ilill. As it presented a new question, I desired to have the aid of Judge Battle and Judge Manly at the hearing, and also the benefit of argument by counsel. For which purpose it vras adjourned to this place. I regret that I have been disappointed. It becomes my duty to decide the case without the presence of the other Judges, and without argument, except by
 
 Mr. Fu/rehes
 
 and
 
 Mr. Winston
 
 in behalf of the petitioner; so that. I am really not apprised of the ground on which the Governor rests his claim of authority.
 

 The petitioner is exempted as a conscript by reason of a substitute, and is exempted from duty as a militia-man by force of the 1st section of the act of the last session of the Legislature, entitled
 
 “
 
 An act in relation to the militia and a
 
 *169
 
 guard for home defence.” Major Harbin sets out in his return to the writ, that he had the petitioner arrested under an order of the Adjutant General for the purpose of .arresting conscripts and deserters, “as said Austin was a member of the Home Guard and liable to perform said duty.” The order is in these words :
 

 “Raleigh, Sept. 15, 1863.
 

 Major A. A. Harbin will immediately call out the Home Guard of Davie county, and arrest every deserter or recusant conscript within said county, and deliver them to Col. Mal-lett at Camp Holmes. If it be necessary, you can pursue said deserters beyond the limits of your county. Those citizens who aid, harbor, or maintain deserters will be arrested and bound over to the courts to answer said charges. Ton will report to this office the manner in which this order has been executed. By order of Gov. YANCE,
 

 J. H. Poote, A. A. Gen.”
 

 The question presented by the petition and return is of great importance. On the one hand,' if the Governor is authorized to require the Home Guard to perform the service of arresting deserters and conscripts, it will promote the efficiency of the Confederate army — on the other hand, it will impose on citizens, who, by the acts of Congress and the Legislature, are exempted from conscription and militia duty, a dangerous and irksome labor.
 

 The subject must be considered by a Judge “ as a dry question of law,” unaffected by collateral considerations growing out of the condition of our country, and .for this reason, his conclusion may differ from that of those who are at liberty to look at it under the bias of feeling.
 

 It is a part of the duty of a soldier of the Confederate army to arrest deserters and recusant conscripts. The Governor of a State has certainly no authority to require a citizen, uncon-, nected with any military organization, to perform this part of the duty of a Confederate soldier. Whether the Governor had authority to require a citizen belonging to the militia to perform this duty, is a question which has not been- decided. It may be conceded, that the Legislature has power to give this authority to the Governor in respect to the militia, on the
 
 *170
 
 ground that they were liable to be called into the service of the Confederate States, and might be required to do a part of the duty, as a compensation for not being called into service and required to do the whole duty of a Confederate soldier. But it is a question worthy of great consideration, whether the Legislature has power to authorize the Governor to require this duty of citizens who do not belong to the militia, which is the only military organization, except enlisted soldiers, recognized by the Constitution. It is not necessary for the purposes of this case to decide the question, and it is referred to only for the sake of applying the rule, “ where a power has never been before exercised and is doubtful, the courts will not presume that it was the intention of the Legislature to assume it, but will require a clear expression of an intention to' do so.”
 

 The matter then stands thus : The Governor has no authority to require ,a citizen, who does not belong to the militia, to perform this part of the duty of a Confederate soldier — has the Legislature conferred the authority upon him? It is insisted that this is done by the act of the last session, entitled “an act in relation to the militia and for home defense j” which act, and the act “ to punish aiders and abetters of deserters” were ratified at the same time, 7th July, 1863, and are tobe construed together. So, the question depends upon the meaning and proper construction of these two-statutes.
 

 At the meeting of the Legislature two questions were pending : First: Congress in its wisdom having allowed substitution and many other exemptions from the conscription acts, was it in the power of the President, by calling upon the State for its quota of militia, to subject the persons so exempted as conscripts, to military duty as militia? Second: Had the Governor authority to require the militia to arrest conscripts and deserters from the Confederate army ? By the first section of the act “ in relation to militia and a guard for home defence,” the problem was solved, and it is enacted that all persons exempted as conscripts shall be likewise exempted from service as militia. By the third section of the act “ to punish aiders and abetters of deserters,” it is enacted that the-Governor may require the militia to arrest deserters and con
 
 *171
 
 scripts ; thus solving the second problem by authorizing the Governor to call out the remnant of the militia, that is, those not exempted from militia duty, to perform a part of the duty of Confederate soldiers, to wit: the officers of the militia and the men between 40 and 45 who had not then been called for as conscripts.
 

 In order, however, to provide for home defence, the Legislature assumed the power of making
 
 State
 
 conscription.— Whether the Legislature had the power to do so, is a question into which it is not necessary to enter. The power is expressly assumed, and it does not become a co-ordinate branch of the State government to decide upon it, unless it be necessary to do so in order to dispose of a case before it. So it may be granted that the Legislature had power to organize for home defence a military body composed of the remnant of the militia, the exempts and persons over the age, liable to militia duty. It is very certain that in doing so, the intention was to make this new body wholly distinct and different from the militia. Persons exempt from militia duty are included, new companies are formed, new officers appointed— in fact, every thing is different, it is a new organization — a State conscription made for two special purposes, “ to be called out against invasions and to suppress insurrections section 6. And special care is taken to distinguish this new body from militia, for otherwise they might, under the- constitution, be called for by the Confederate States. Upon what ground then, can it be insisted, that the Governor is authorized to require this newly organized body and peculiar State institution to perform a part of the duty of Confederate soldiers? It is said, the authority follows as a consequence of the military organization. I cannot see the force- of the argument. In the act declaring the special purposes for-which this new organization is made, no such authority is expressly given to the Governor — the power of the Legislature to confer it, even if such had been the intention, is by no-means clear, and so we are not at liberty by implication to-infer that such was the intention, and the act “ to punish aiders and abetters of deserters” puts the ¡matter, as it seems tome, out of the range of discussion, by-
 
 expressly authorizing
 
 
 *172
 
 the Governor to use
 
 the militia
 
 to arrest deserters and conscripts, thereby excluding, as plainly as words could do it, any authority to require such service of this new organization —the State couscrips, Home Guard.
 
 JExpressio unius exelu-sio alterius
 
 is a well established rule of construction which the ■courts are not at liberty to disregard, and its soundness, when the object is to ascertain the intention of the Legislature and neither to fall short of it or go beyond it, is fully illustrated by this case. So, the two statutes relied on as confirming the authority of the Governor, actually exclude it by a double implication. In the first place, the act authorizes the Governor “ to call out the Home Guard against invasions and to suppress insurrections.” Why was it not added “ and to arrest deserters and recusant conscripts.” if such was the intention ? That subject was present to the minds of the Legislature. In the second place, the act authorizes the Gov-erner in so many words u to call out
 
 the militia
 
 to arrest deserters and conscripts.” Why did it not add, and “. also the Home Guards,” if such was their intention ? The conclusion that it was not the intention of the Legislature that the
 
 Home Guards
 
 should be subject to this service is as clear as if the ■acts had contained the words “ provided, however, that the Governor ■shall not have authority to require the
 
 Home Guards
 
 to arrest deserters and conscripts;” unlessit be contended that the Governor has all power except such as is expressly prohibited — a position which, I suppose, no man will venture to •assume.
 

 The argument may be stated thus : The statute expressly authorizes the Governor to require “ the militia,” that is, the the officers and men between forty and forty-five, to arrest deserters, that is, they form a part of the Home Guard — it follows, the Governor had no authority to require the
 
 whole dody
 
 of the Home Guard to perform this duty; for, if he had such, authority, it was vaifi, idle, and superfluous to authorize him expressly to require a part to do that which he had authority to require of the whole. In this connection the provision, section 3, “ The commissions of the officers of the militia shall be suspended only during the period of their service
 
 Isa
 
 the Home Guard,” has an important bearing, the object
 
 *173
 
 being to preserve the organization of the militia and to use them to arrest deserters, for which purpose the force was then adequate. The fact that, afterwards, the call for the men between 40 and 45 as conscripts, made the force inadequate, cannot change the meaning and proper construction of the statutes. If an amendment was thereby made necessary, the Legislature must make it; for neither the Governor nor the Judges have authority to strain the" law to meet the emergency.
 

 I am aware of the responsibility under which I act. Jurisdiction is given to a single Judge in vacation — my decisions fixes the law, until it is reversed by the Supreme Court, or amended by the Legislature, and I would not feel it to be my duty to stay the action of the Executive, except upon the clearest conviction.
 

 "Whether, in the event the Governor should call out the* Home Guard to repel a raid or suppress an insurrection, he* would not, while the men were on this tour of service, which is limited to three months, (sec. 6,) have authority, collaterally/to require them to take up deserters and conscripts, who* might aid the enemy, is a question to be presented. We are-confined to the naked question, has the Governor authority to* require the Home Guard to be called out for the mere purpose* of arresting deserters and conscripts ? The special order under which Major TIarbin acted is for this purpose alone. It i& true, that the State was, before the passage of the acts, invaded, and the enemy was at that time arid is now within the* limits of our State ; but the order does not profess to be made-for the purpose of repelling that invasion, there is no “ tour of duty prescribed 'by the Governor not exceeding three-months at any one time,” according to the provisions of the* 6th section. The time is unlimited and the purpose is declared to be,
 
 “
 
 to arrest every deserter and recusant conscript within the county of Davie, and deliver them to Col. Mallettr at Camp Holmes.”
 

 The suggestion that, as the arrest of deserters and conscripte would promote the efficiency of the Confederate army, and thereby tend to defend the State* against the invasion, the* authority of the Governor can be sustained on that ground..
 
 *174
 
 involves a latitude of construction unsupported by any principle of law, and, as it seems to me, cannot impress with much force the mind of any one who will read the two statutes attentively and in connection. He will see from the mode of defence contemplated by the Legislature in calling out the Home G-uard for defence against invasion and insurrection, by regiments, battalions and companies, on tours of duty within the State not to exceed three months, &c., that the indirect and far off mode of repelling the existing invasion by arresting deserters and conscripts, was not in the mind of the Legislature, except when the Governor was authorized to use the
 
 militia
 
 for that purpose; which,'according to the view I have taken above, excludes the conclusion that the Guard for home defence — -the State conscripts — wrere to be used for that purpose also. For, if so, it was surely vain, idle and superfluous to impose that service on the militia, who constituted but a small part of the guard for home defence.
 

 The position was taken-on the argument, that the order under consideration clearly exceeds the Governor’s authority, in this : It requires the guard for home defence
 
 “
 
 to arrest and bind over to the Court to answer said charges, those citizens who aid, harbor and maintain deserters,” and is therefore void
 
 in toto.
 
 It is true, citizens who aid, &c., deserters, &c., although made liable to indictment by one of the statutes referred to, cannot, according to the constitution and laws of the land, be arrested and bound over the to Court, to answer the charge, by military authority — that can only be done by the civil authority, to wit: a warrant by a Judge or justice of the peace on probable cause shown on oath, and executed by the sheriff or constable. So, it is clear that part of the order is void and against law. But it does not vitiate the other part of the order,'provided the Governor had authority to make it.
 

 It is thereupon considered by me, that Richard M. Austin be forthwith discharged.
 

 R. M. PEARSON, Oh. J. S. C.